## Isaacs et al. v. Inland Steel Co.

November 7, 1947.

Henry Stephens, Judge.

Clark Pratt for appellants.

J. W. Howard and Howard & Combs for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Affirming.

Appellants brought a suit to recover damages for alleged injuries to land said to have been caused by the mining operations of appellee. At the conclusion of the trial, the Court below directed a verdict for appellee. Appellants urge for reversal: (1) the Court erred in excluding certain evidence of damage, and (2) the Court erred in directing the verdict.

Appellants own the surface rights in a 100 acre tract of land and appellee owns all minerals thereunder. Appellants' pleadings alleged that appellee's mining operations for the removal of coal underlying this property damaged and destroyed fruit trees, impaired the agricultural productivity of the soil, caused water supplies to dry up, and created breaks in the land. It was further alleged that the acts of appellee were done recklessly, willfully, wantonly, maliciously, and unnecessarily.

The substance of the defense to the action was that appellee, by virtue of its ownership of the minerals and incidental rights, had the legal right to do the acts complained of, and actually appellants had not been damaged.

By virtue of a "Deed of Conveyance" executed in 1903 to appellee's predecessor in title, the then owner of this 100 acre tract had granted and conveyed all coal, gas, salt, iron and other minerals and mineral substances and products in, on or under the land; including necessary timber, rights of way, rights to use, divert or pollute water courses thereon; rights of drilling, mining, and pumping; the right to erect, wreck and remove buildings, machinery, and other equipment; and the right to dump, store and leave upon said land muck, bone, shale and other refuse.

The deed further provided that the grantee was released from any and all liability "occasioned by or resulting directly or indirectly from such use or occupation, or the exercise of said rights or privileges, or any or all of them."

The grantor reserved certain timber on the premises, and the free use of the land for agricultural purposes

"so far as such use is consistent with the rights hereby bargained, sold, granted and conveyed * * *." One remaining reservation appears in the following words: "There is (2) acres around the dwelling house of the grantor on which said grantor is to have pay for any damage that may be done."

The above is a very brief outline of the contents of this mineral deed, but it is clear that the grantee was vested with title to all minerals and substances beneath the surface, and with complete and far-reaching rights to conduct mining operations. The only interests in this tract reserved or retained by the grantor were those above stated. It is evident that appellee would not be liable for any injuries to the land which were caused by its normal mining operations on or under the property outside of the two acre square around the grantor's dwelling house. For this reason the Court below properly excluded evidence of general damage which might have been caused by appellee's operations.

The only other question in the case is whether or not appellee damaged the property of appellant within the two acre tract referred to in the deed. This reservation is somewhat uncertain, and appellee argues that it is subject to different constructions. We do not deem it necessary to determine if the reservation is limited, as contended, to the commission of affirmative acts on this tract, such as erecting structures or machinery, physically trespassing on the property or otherwise using the surface. In view of the principle that a mineral grant of the sort here involved gives the grantee paramount rights in the prosecution of its business, (Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S. W. 573) and that the instrument shall be construed most strongly against the grantor (McIntire v. Marian Coal Company, 190 Ky. 342, 227 S. W. 298), it was incumbent on appellant to clearly prove that injuries to the two acre tract, if any, were actually caused by the mining operations of appellee.

The substance of the evidence for appellants is that a well near the dwelling house and other watering places had been running dry during the summer months; that certain fruit trees had died; that some of the crops on the property have not been doing as well as could be

expected; and that some breaks had appeared in the soil, although their location is quite uncertain. There was also testimony that this two acre tract of land, including the buildings thereon, had a value of $1,500 before the mining took place, and it now has a reasonable market value of only $200.

The testimony for appellants is not convincing that any damage was actually caused by mining operations. Appellees have by their evidence substantially proved that the entire tract had been mined by the use of generally accepted methods; that only 15 percent of the coal had been taken from under the two acre tract, whereas it is customary to remove 65 percent of the coal without injury to the surface; that above the vein of coal which had been mined under the two acres was a strata of solid rock, and there were no falls or breaks in the roof over the coal.

There was further testimony to the effect that the mining operations could not have caused a loss of water in the well, nor could it have drawn water from any springs on the two acre tract. There was introduced in evidence a number of photographs, taken in July 1943, soon after the suit was filed, some in color, which do not bear out the claim of appellants that the vegetation or the fruit trees had been damaged. There was further proof that the mining operations under and around this two acre tract have been carried on in a careful and prudent manner. There was a complete lack of evidence that the operations were in any way wanton or willful or malicious or negligent as alleged.

After a review of the entire case, it is our opinion that appellants failed to show with reasonably certainty the nature or extent of their damages, if any, or the cause from which they may have proceeded, and therefore there was insufficient evidence upon which a jury could have found a verdict for appellants. Fordson Coal Company v. Whitt, et al., 253 Ky. 484, 69 S. W. 2d 992, and Bogar v. Fordson Coal Co., 283 Ky. 594, 142 S. W. 2d 143.

The trial court properly directed a verdict for appellee, and the judgment is affirmed.